UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

RAFAEL VASQUEZ,

    Plaintiff,

v.

COUNTRYWIDE HOME LOANS, INC.,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
FEDERAL NATIONAL MORTGAGE
ASSOCIATION AND JOHN DOE,

Defendants.

Adversary Proceeding No: 1-10-ap-01020

### DEFENDANTS' MEMORANDUM IN LAW IN SUPPORT
### OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants Countrywide Home Loans, Inc. ("Countrywide"), Mortgage Electronic Registration Systems, Inc. ("MERS") and Federal National Mortgage Association ("Fannie Mae") (collectively, "Defendants") hereby submit this memorandum of law in support of Defendants' Motion for Summary Judgment on all counts and claims in the Amended Complaint ("Complaint") of the Plaintiff Rafael Vasquez ("Plaintiff" or "Vasquez").

As to Plaintiff's claims under the Truth in Lending Act ("TILA") in Counts I and II, Defendants are entitled to judgment in their favor because (i) Plaintiff lacks standing to pursue the claims in the Amended Complaint; (ii) the disclosure statement was accurate as the alleged fees are specifically excluded from the finance charge and Plaintiff has failed to support how any of the alleged fees were not bona fide or reasonable; and, (iii) Plaintiff is time barred under 15 U.S.C. §1640 from obtaining statutory damages.[1]  In addition, Count III should be deemed moot

---

[1] On July 7, 2011, this Court issued its Decision and Order (Doc 38) wherein it ruled that Plaintiff's statutory right to seek damages under Section 1640(e) is time-barred. *See* Order, p. 1-2.

as Plaintiff's underlying Bankruptcy Proceeding was closed on November 23, 2012 thereby obviating any need for relief concerning Fannie Mae's Proof of Claim. Accordingly, as set forth more fully below, judgment must issue as a matter of law for the Defendants on each of Plaintiff's claims in the Amended Complaint.

## FACTUAL BACKGROUND

A.  *Plaintiff's Refinance and Loan at Issue*

Plaintiff Rafael Vasquez resides at 9-11 Bellevue Avenue in Providence, Rhode Island ("Property"). See Statement, ¶1. On March 27, 2007, Plaintiff entered into a transaction to refinance his mortgage loan on the Property (the "Closing"). See Statement, ¶2. The Plaintiff executed a note payable to Countrywide Home Loans, Inc. in the amount of $288,000.00 ("Note"). See Statement, ¶3. To secure the Note, the Plaintiff executed a mortgage on the Property in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Countrywide Home Loans, Inc., its successors and assigns ("Mortgage") (together with the "Note", the "Plaintiff's Loan"). See Statement, ¶4. As reflected in the Settlement Statement from the Closing, the Plaintiff's Total Settlement Charges were $10,246.24, which included several fees paid to unaffiliated third parties. See Statement, ¶5.

B.  *Plaintiff's Second Mortgage*

At the same time, the Plaintiff entered into another note with Countrywide Bank, FSB in the amount of $29,000.00 ("Second Note"). See Statement, ¶6. To secure the Second Note, the Plaintiff executed a second mortgage on the Property in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Countrywide Home Loans, Inc., its successors and assigns ("Second Mortgage"). See Statement, ¶7.

C.     *Foreclosure Proceedings and Plaintiff's Bankruptcy Filing*

In early 2010, the Defendants began commencement of foreclosure proceedings. *See* Statement, ¶8. On February 22, 2010, MERS assigned the Mortgage to Fannie Mae.[2] *See* Statement, ¶9. On March 26, 2010, the Plaintiff filed a Chapter 13 Petition in this Court staying all foreclosure proceedings (the "Bankruptcy Proceeding"). *See* Statement, ¶10. In his Petition, however, Plaintiff failed to schedule any of the claims or causes of action asserted herein. *See* Statement, ¶11. On April 30, 2010, BAC Home Loans Servicing, LP as servicer for Fannie Mae filed a proof of claim on the Note for $297,629.04. *See* Statement, ¶12. On June 7, 2010, BAC Home Loans Servicing, LP filed a proof of claim on the Second Note for $30,098.37. *See* Statement, ¶13.

On April 13, 2010, the Plaintiff filed a motion to modify secured claims. Pursuant to the Plaintiff's motion, the new modified principal balance on the Note would be reduced to $126,000.00. The claim on the Second Note would be converted to an unsecured claim. On August 30, 2010, the Court entered an Order approving the plan and granting the motion to modify the Note and converting the Second Note to an unsecured claim. The proposed modification of the Note and complete strip down of the Second Note would not be effective until a discharge had been entered. *See* Statement, ¶14.

D.     *Plaintiff's Conversion to Chapter 7 Bankruptcy and Discharge*

On August 15, 2012, Plaintiff filed a Notice of Voluntary Conversion to a Chapter 7 bankruptcy. *See* Statement, ¶15. Upon conversion, Plaintiff did not seek to amend his schedules, exempt any of his adversary proceeding claims or reaffirm his debt. *See* Statement, ¶16. On November 23, 2012, Plaintiff received a discharge under Section 727 of the United States Bankruptcy Code. *See* Statement, ¶17. At present, Plaintiff's Loan is in default and

---

[2] Bank of America, N.A. currently services Plaintiff's First and Second Mortgages.

owing for September 2011 (18 months delinquent) and Bank of America, who services Plaintiff's First and Second Mortgages, has been paying the hazard insurance and city taxes for the Property. Statement, ¶18.

E. *Plaintiff's Notice of Rescission of Loan at Issue*

In his Amended Complaint, Plaintiff alleges that at the time of the closing, the Plaintiff did not receive an accurate Truth in Lending Disclosure Statement with respect to the Note.[3] *See* Statement, ¶19. Specifically, the Plaintiff alleges that certain marked up charges were not bona fide and reasonable and were not listed as finance charges on the Truth in Lending Disclosure statement which resulted in an incorrect calculation of the Annual Percentage Rate. *See* Statement, ¶20. As a result, the Plaintiff forwarded a Notice of Rescission to Countrywide on February 24, 2010 for alleged failure to comply with the Truth in Lending Act and/or violation of Regulation Z. *See* Statement, ¶21.

## ARGUMENT

**I. Standard of review**

A court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable to bankruptcy proceedings through Fed. R. Bankr. P. 7056); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). For the reasons discussed below, application of the summary judgment standard here requires that summary judgment enter in favor of Defendants on all counts of the Amended Complaint.

---

[3] As set forth in Plaintiff's Chapter 13 plan, Plaintiff does not make any TILA claims with respect to the Second Note and does not seek to rescind the Second Mortgage either.

4

**II.    Plaintiff Does Not Allege Any Wrongdoing by MERS and Summary Judgment Must Enter in its Favor.**

Plaintiff uses the non-specific word "Defendant" or "Defendants" throughout the Amended Complaint without specifying which "Defendant" engaged in certain acts. Although Plaintiff makes no allegations of wrongdoing against Defendant MERS, Plaintiff treats each alleged cause of action as if it were alleged against MERS. As discussed below, however, Plaintiff's claims against MERS fail as Plaintiff has failed to identify any wrongdoing against it. As a result, the Court should grant summary judgment in MERS' favor on each and every claim of the Amended Complaint.

**III.   Plaintiff Lacks Standing to Pursue any Claims in the Amended Complaint.**

Defendants are entitled to summary judgment on Plaintiff's Amended Complaint because the Plaintiff lacks standing to assert the claims therein. Specifically, the Plaintiff should be judicially estopped from pursuing his litigation claims against the Defendants, which existed before the commencement of his bankruptcy case, because he effectively abandoned his claims by failing to schedule them as assets in his initial Bankruptcy Petition, and by failing to amend his Schedules when he voluntarily converted his case to a Chapter 7 proceeding.

   A.   *Plaintiff Never Scheduled his Claims in the Underlying Bankruptcy Proceeding and Judicial Estoppel Bars such Claims*

Under Rule 1007 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 521(a)(1)(B)(ii), the Plaintiff was required to file, together with his bankruptcy petition, a schedule of assets and liabilities.[4] In listing assets, a debtor is required to include any claims or causes of action. *Payless Wholesale Distribs., Inc. v. Alberto Culver, Inc.*, 989 F.2d 570, 571

---

[4] The purpose of § 521's requirement that a debtor file a schedule of assets and liabilities is to provide a full accounting of his financial state so that the debtor "obtain[s] a discharge from [his] creditors in return for all [his] assets, except those exempt, as a result of which creditors release their own claims and the bankrupt can start fresh." *Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993).

5

(1st Cir. 1993). Here, the Plaintiff indicated that he had no "contingent and unliquidated claims of any nature…" in his schedule of assets. *See* <u>Statement</u>, ¶11. "[B]y operation of 11 U.S.C. § 554(c) and (d), any asset not properly scheduled remains property of the bankrupt estate, and <u>the debtor loses all rights to enforce it in his own name</u>." *Jeffrey v. Desmond*, 70 F.3d 183, 186 n. 3 (1st Cir. 1995) *citing Vreugdenhill v. Navistar Int'l Transportation Co.*, 950 F.2d 524, 526 (8th Cir. 1991) (emphasis added). "It is well-established that a failure to identify a claim as an asset in a bankruptcy proceeding is a prior inconsistent position that may serve as the basis for application of judicial estoppel, barring the debtor from pursuing the claim in a later proceeding." *See Guay v. Burack*, 677 F.3d 10, 12 (1st Cir. 2012) *citing Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010) ("[E]very circuit that has addressed the issue has found that judicial estoppel is justified to bar a debtor from pursuing a cause of action in district court where that debtor deliberately fails to disclose the pending suit in a bankruptcy case."). The burden was on Plaintiff to schedule his claims against Defendants at the time of his bankruptcy filing. It follows that the Plaintiff's "failure to announce this claim against a creditor precludes [him] from litigating the cause of action . . ." *Payless*, 989 F.2d at 572 *citing Oneida Motor Freight v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988).

      Thus, it is well-settled law that a debtor cannot omit a cause of action from his schedule of assets, leaving his creditors in the dark as to a potential source of payment for their claims, and then bring the cause of action on his own once those claims have been compromised or released in the bankruptcy, keeping any recovery for himself. *See Locopo v. Colsia*, 609 F. Supp. 2d. 156 (D.N.H. 2009). Here, Plaintiff is estopped from raising the instant claims against his creditors when he had an obligation to schedule those claims in his Bankruptcy Proceeding.

6

B. *Plaintiff's Claims Remain Property of the Estate*

Pursuant to 11 U.S.C. §554, the Bankruptcy Trustee needs to have the option to abandon claims scheduled in the bankruptcy. Here, because the Trustee of Plaintiff's estate never had notice of his claims against Defendants, the Trustee had no opportunity to abandon those claims, which therefore remained - - and still remain - - assets of the estate. *See* 11 U.S.C. § 554(d) ("Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."); *see also Locopo*, 609 F. Supp. 2d at 159. Therefore, under the law of this Circuit, the Plaintiff's claims against the Defendants have become property of his estate and he lacks standing to prosecute those claims here. *See, e.g., Marley v. Bank of America*, C.A. No. 10-10885-GAO, 2010 U.S. Dist. LEXIS 133202, at * 4 (D. Mass. Dec. 16, 2010) (holding that plaintiff "lack[ed] standing to prosecute causes of action which accrued prior to the filing of the bankruptcy petition as they should have been scheduled as assets in his chapter 7 bankruptcy proceeding"); see also *Graupner v. Town of Brookfield*, 450 F.Supp.2d 119, 129 (D. Mass. 2006) (where plaintiff failed to disclose claim in Chapter 7 bankruptcy case, party with standing to bring claim remained the Chapter 7 trustee). Plaintiff's claims against Defendants are property of that estate and must be administered as such. At this point in time, only the Bankruptcy Trustee has standing to pursue the Plaintiff's claims.

C. *Plaintiff Never Reaffirmed his Loan in the Bankruptcy*

A Chapter 7 discharge enables an "honest but unfortunate" debtor to obtain relief from his debts, thereby granting the debtor a "fresh start". *Local Loan Co v. Hunt*, 292 U.S. 234, 244 (1934). However, a debtor may voluntarily elect to retain, or reaffirm, a dischargeable debt by entering into a reaffirmation agreement with a specific creditor. *See In re Strong*, 232 B.R. 921,

7

923 (Bankr. E.D. Tenn. 1999).[5] Reaffirmation is the only means by which a dischargeable debt may survive a Chapter 7 discharge. Section 524 of the Bankruptcy Code governs the reaffirmation process and enables a Chapter 7 debtor to reaffirm a pre-petition debt that is otherwise dischargeable by agreeing to pay all or part of that debt. 11 U.S.C. § 524. In order for a reaffirmation agreement to be valid and enforceable, it must strictly comply with all of the requirements set forth in § 524(c). *In re Cruz*, 254 B.R. 801, 815 (Bankr. S.D. N.Y. 2000).

The Court in, *In re Chubb*, 351 B.R. 478, 483-484 (Bankr. E.D. Tenn. 2004), held that a chapter 7 debtor (like here) could not simply retain collateral and continue contractual payments post-discharge; instead the debtor must have either redeemed the property from the creditor's lien or entered into a new agreement with the creditor pursuant to §524(c). *See In re Lock,* 243 B.R. 332, 334 (Bankr. S.D. Ohio 1999). (The conclusion that "a debtor who wishes to retain collateral must either redeem the property or reaffirm the debt" is compelled by "[t]he plain language of § 521(2)(A)" and "strongly supported by the Sixth Circuit's decision in *In re Bell.*"); *In re Hopkins,* 1997 Bankr. LEXIS 2092, *1 (Bankr. W.D. Mich. 1997) ("*Bell* instructs that lump-sum redemption and reaffirmation 'constituted the exclusive methods' for debtors to retain possession of the secured collateral.").

By not scheduling the instant claims in his bankruptcy schedules and by failing to reaffirm his debt at conversion, Plaintiff lacks standing to now pursue his claims against the Defendants and he should be judicially estopped from the relief he seeks. As such, this Court should enter judgment for Defendants on all claims of Plaintiff's Amended Complaint.

---

[5] If the debt were discharged, the debtor would be relieved of personal liability on the debt, but the creditor would be free to take possession of any collateral securing the debt because a bankruptcy proceeding does not extinguish a creditor's security interest. *See Dewsnup v. Timm*, 502 U.S. 410, 417-19 (1992); *In re Penrod*, 50 F.3d 459, 461 (7th Cir. 1995); *In re Turner*, 156 F.3d 713, 715 (7th Cir. 1998).

8

**IV.     Defendants are Entitled to Judgment on Counts I and II
         <u>Because the Truth in Lending Disclosure was Accurate.</u>**

Notwithstanding that the Plaintiff lacks standing to pursue any of the claims in his Amended Complaint, as explained above, Defendants are also entitled to Summary Judgment on Counts I and II because the Truth in Lending disclosure was accurate.

   *A.     Plaintiff Claims that Certain Fees should have been Included in the Finance
           Charge*

In Count I, Plaintiff has pled that the Truth in Lending Disclosure did not disclose an accurate annual percentage rate and understated the finance charges.  (Compl. ¶15).  Plaintiff claims that "certain marked up charges, which were not bona fide and reasonable, were not listed as finance charges on the Truth in Lending Disclosure."  (Compl. ¶10).  Specifically, Plaintiff believes that the following charges were unreasonable and should have been included in the finance charge:

   1.     *$90.00 Tax Certificate charge* - - Plaintiff claims this amount should have been included in the finance charge.  (Compl. ¶10(a)).

   2.     *$25.00 ALTA 8.1 endorsement charge* - - Plaintiff claims this amount is a "junk fee" which is not charged by title companies and should have been included in the finance charge.  (Compl. ¶10(b)).

   3.     *$210.00 title search charge* - - Plaintiff claims this charge should have been included in the finance charge to the extent that it was not the actual charge paid to an unaffiliated third party.  (Compl. ¶10(c)).

   4.     *$422.60 title policy fee* - - Plaintiff claims this charge should have been included in the finance charge to the extent that it was not paid to an unaffiliated third party.  (Compl. ¶10(d)).

9

5. *$35.00 credit report fee* - - Plaintiff claims this fee paid to Land Safe Credit, an alleged affiliate and subsidiary of Defendant, should have been considered a finance charge. (Compl. ¶10(e)).

6. *$25.00 survey fee* - - Plaintiff claims this charge should have been included in the finance charge to the extent that it was not the actual charge paid to an unaffiliated third party. (Compl. ¶10(f)).

TILA specifically exempts fees or premiums for title examination, title insurance, or similar purposes from the computation of the finance charge. 15 U.S.C. § 1605(e). However, regulations specify that for these fees to be exempt, they must be bona fide and reasonable in amount. 12 C.F.R. § 226.4(c)(7). Therefore, in the context of a TILA rescission case, the Plaintiff must allege how and why certain charges and fees are not bona fide and are unreasonable. *See McKenna v. Wells Fargo Bank, N.A.*, 693 F. 3d 207, 216 (1st Cir. 2012) *citing Guise v. BWM Mortg.*, LLC, 377 F.3d 795, 800 (7th Cir. 2004); and, *Brannam v. Huntington Mortg. Co.*, 287 F.3d 601, 606 (6th Cir. 2002), cert. denied, 537 U.S. 1048 (2011).

B. *Plaintiff Fails to Explain how any of the Fees are Not Bona Fide or Reasonable*

To determine whether the title search fees are "bona fide and reasonable in amount", courts have looked to whether the services were rendered in good faith, whether the fees indirectly augmented the yield of the loan, or whether the services were comparable to the prevailing practices of the industry in the locality. *Parham v. HSBC Mortg. Corp.*, 826 F. Supp. 2d 906, 912 (E.D. Va. 2011) (quotations omitted) *citing Hudson v. Bank of Am., N.A.*, 2010 U.S. Dist. LEXIS 57909, at *3; *see also Little v. Bank of Am., N.A.*, 769 F. Supp. 2d 954, 959 (E.D. Va. 2011) ("A fee is reasonable where it is comparable to 'the prevailing practices of the industry in the locality."). At no time in the Amended Complaint does Plaintiff explain why any

10

of the aforementioned fees were not bona fide or unreasonable. In fact, all that Plaintiff alleges is that these fees should have been included in the disclosed finance charge - - *to wit*, "[s]pecifically certain marked up charges, which were not bona fide and reasonable, were not listed as finance charges on the Truth in Lending Disclosure." (Compl. ¶10). Yet, despite Plaintiff's formulaic recitation of the elements of a TILA violation, his argument lacks any legal merit and judgment should enter for Defendants.

*First*, the $90.00 Tax Certificate charge, which Plaintiff claims should have been included in the finance charge, was in fact included. The Itemization of Amount Financed shows this fee as a "Tax Service Fee" for $90.00 and, therefore, it cannot be included in his argument concerning understatement of finance charges. *See* Statement, ¶20 and 24 / Exs. R, T and V. As such, Plaintiff's claim with respect to this fee fails as a matter of law.

*Second*, Plaintiff claims that the $25.00 ALTA 8.1 endorsement charge "is a 'junk fee', not charged by title companies, and therefore should have been included in the finance charge." (Compl. ¶10(b)). However, 15 U.S.C. §1605(e)(1) expressly excludes title insurance fees from computation of finance charges. In addition, Regulation Z similarly provides that "fees for title examination, abstract of title, title insurance, property survey, and similar purposes" are not finance charges "if the fees are bona fide and reasonable." *See* 12 C.F.R. § 226.4(c)(7)(i). As noted in the Loan closing instructions, the ALTA 8.1 endorsement "must be included with the Title Policy." *See* Hauff Decl., ¶23 / Ex. U - Section C.7. In addition, Countrywide's Title Policy indicates that Endorsement 8.1 has been incorporated into the policy. *See* Hauff Decl., ¶25 / Ex. W. Finally, this charge was paid by Countrywide to ServiceLink - - an unaffiliated

11

third party.  See Hauff Decl., ¶21 and 26 / Exs. S[6] and X.  There is no impropriety with such charge, nor is the charge a "junk fee" as Plaintiff superficially argues.  Accordingly, Plaintiff's claim with respect to the alleged unreasonableness this fee fails as a matter of law, such that it does not need to be included in the finance charge.

*Third*, Plaintiff claims that the $210.00 title search fee should have been included in the finance charge "to the extent that it was not the actual charge paid to an unaffiliated third party." (Compl. ¶10(c)).  However, as noted above, Section §1605(e)(1) and Regulation Z expressly excludes title insurance fees from computation of finance charges if the fees are bona fide and reasonable.  See 12 C.F.R. § 226.4(c)(7)(i).  *See also Brannam, supra* at 606 (stating that a charge is bona fide if the "services for which the fees are imposed are performed").  As noted on the HUD-1 Settlement Statement, the Good Faith Estimate and ServiceLink's Invoice to Countrywide, the title search charge was paid to ServiceLink - - an unaffiliated third party. Hauff Decl., ¶6, 22 and 26 / Exs. D, T and X.  Plaintiff has failed to support how the title search fee is not bona fide or reasonable and, therefore, Plaintiff's claim with respect to this fee fails as a matter of law.

*Fourth*, Plaintiff claims that the $422.60 title policy fee should have been included in the finance charge to the extent that it was not paid to an unaffiliated third party.  (Compl. ¶10(d)). However, as noted above, title insurance fees are excluded from computation of finance charges if bona fide and reasonable.  See 15 U.S.C. §1605(e)(1); 12 C.F.R. § 226.4(c)(7)(i); and, *Brannam, supra*.  Again, the HUD-1 Settlement Statement, the Good Faith Estimate and Invoice to Countrywide shows that this fee was paid to ServiceLink - - an unaffiliated third party.  *See*

---

[6] Exhibit S identifies entities that are "affiliated businesses" of Countrywide Home Loans, Inc., which may provide Countrywide with a financial or other benefit.  ServiceLink is not identified on this Disclosure Statement.  In fact, ServiceLink, an unaffiliated third party, was acquired by Fidelity National Financial (FNF) in 2005 and became the centralized national lender platform for FNF companies.
(*See* http://www.servicelinkfnf.com/page/aboutServiceLink/history.html).

12

Hauff Decl., ¶6, 22 and 26 / Exs. D, T and X. In addition, a title insurance policy was in fact issued by Chicago Title naming Countrywide as the insured. *See* Hauff Decl., ¶25 / Ex. W. Plaintiff has failed to support how the title search fee is not bona fide or reasonable and, therefore, Plaintiff's claim with respect to this fee fails as a matter of law.

*Fifth,* Plaintiff claims that the $35.00 credit report fee paid to LandSafe Credit, an alleged affiliate and subsidiary of Defendant, should have been considered a disclosed finance charge. (Compl. ¶10(e)). Again, under 12 C.F.R. § 226.4(c)(7)(iii), credit report fees are excluded from the finance charge if they are bona fide and reasonable in amount. LandSafe Credit, Inc. is identified as an affiliated entity on the Affiliated Business Arrangement Disclosure Statement, wherein it states that the estimated charge or range of charges for credit reporting is "$25-$55 for individual reports..." *See* Hauff Decl., ¶21 / Ex. S. Also, Countrywide's written discovery document production to Plaintiff provided copies of the credit reports that were obtained by Countrywide with respect to Plaintiff's refinance.[7] Because credit report fees are excluded from the finance charge under 12 C.F.R. § 226.4(c)(7)(iii), Plaintiff must illustrate why such fee is not bona fide and reasonable for them to be included. Plaintiff has failed to offer any explanation as to unreasonableness and, accordingly, his claim with respect to this fee must fail.

*Sixth,* and finally, Plaintiff claims that the *$25.00 survey fee* "should have been included in the finance charge to the extent that it was not the actual charge paid to an unaffiliated third party." (Compl. ¶10(f)). As noted above, Regulation Z provides that "fees for title examination, abstract of title, title insurance, *property survey*, and similar purposes" are not finance charges "if the fees are bona fide and reasonable." *See* 12 C.F.R. § 226.4(c)(7)(i) (emphasis added). Again, ServiceLink's Invoice to Countrywide identifies the $25.00 ALTA Survey Coverage fee and

---

[7] Due to the personal, confidential nature of these documents, Countrywide does not include them herein as an Exhibit, but notes to the Court and Plaintiff that the credit reports were produced during discovery as bates-numbers CWL 419-429.

13

ServiceLink is not an affiliated entity of Countrywide. *See* Hauff Decl., ¶21 and 26 / Exs. S and X. As such, without further explanation of how this fee is not bona fide or reasonable, Plaintiff's claim with respect to this fee fails as a matter of law.

Since unreasonableness of the fees is the foundation for all the Plaintiff's claims for relief, and Plaintiff has failed to make even a threshold showing of how any of these fees are not bona fide or reasonable, the Court must enter summary judgment for the Defendants on Counts I and II of the Amended Complaint.

V.     **Defendants are also Entitled to Judgment on Count II because Plaintiff is Time-Barred from Seeking Statutory Damages under Section 1640(e).**

In Count II, Plaintiff claims that the Defendant's "failure to include the items referenced [above] as finance charges increased the Annual Percentage Rate so that it was understated beyond the tolerance limit of .125%." (Compl. ¶21-22). As explained above, Plaintiff's claim that TILA Statement was inaccurate lacks legal merit necessitating judgment for Defendants. Furthermore, On July 7, 2011, this Court issued its *Decision and Order* wherein it ruled that Plaintiff's statutory right to seek damages under Section 1640(e) was time-barred. *See* Order, p. 1-2 (Doc 38).[8] In Count II of the Amended Complaint, however, Plaintiff attempts to reassert his right to statutory damages. Accordingly, Defendants are also entitled to judgment on Count II because Plaintiff is time-barred from seeking statutory damages under Section 1640 and because Countrywide's disclosures were, in fact, accurate.

---

[8] On March 26, 2010, Plaintiff filed the original Complaint in this Adversary Proceeding. As noted above, according to the Complaint, Plaintiff entered into a transaction to refinance his mortgage on the Property on March 27, 2007. *See* Statement, ¶2. Accordingly, the one-year time limitation under 15 U.S.C. §1640(e) had expired by the time Plaintiff filed the original Complaint.

14

**VI.     Count III Should be Deemed Moot as Plaintiff's Underlying Bankruptcy Proceeding was Closed on November 23, 2012.**

In Count III of the Amended Complaint, Plaintiff alleges that Fannie Mae's proof of claim filed in the underlying Bankruptcy Proceeding should be denied due to alleged violations of TILA. Defendants ask that Count III be deemed moot as Plaintiff's underlying Bankruptcy Proceeding was closed on November 23, 2012. *See generally* Bankruptcy Proceeding 10-11236.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court find that there are no genuine issues of material fact and enter summary judgment for Defendants on all claims of Plaintiffs' Amended Complaint.

**COUNTRYWIDE HOME LOANS, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. and FEDERAL NATIONAL MORTGAGE ASSOCIATION**,

By their attorneys,

Dated:  January 31, 2013

/s/ *Harris K. Weiner*
Harris K. Weiner, Esq.
Salter McGowan Sylvia & Leonard
321 South Main Street
Providence, RI  02903
(401) 274-0300 / hweiner@smsllaw.com

Of Counsel:

Jill K. Hauff, Esq. (*pro hac vice*)
RAPHAEL LLC
One Liberty Square
Boston, Massachusetts 02109
Tel.:  617.542.7960
Fax:  617.307.4486
jhauff@raphaelllc.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RAFAEL VASQUEZ,<br><br>      Plaintiff,<br><br>v.<br><br>COUNTRYWIDE HOME LOANS, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., FEDERAL NATIONAL MORTGAGE ASSOCIATION AND JOHN DOE,<br><br>      Defendants. | Adversary Proceeding No: 1-10-ap-01020 |

## **CERTIFICATE OF SERVICE**

      The undersigned understands that the following counsel of record are registered on the Court's CM/ECF database. As a result, this individual (1) will receive from the Court electronic notification of the filing of the *Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment* filed via ECF on January 31, 2013; (2) has access to this document through the Court's website; and (3) will not receive paper copies of the foregoing from the undersigned upon filing.

John B. Ennis
John B. Ennis, Esq.
1200 Reservoir Avenue
Cranston, RI 02920
Tel: 401-943-9230
Fax: 401-946-5006
Email: Jbelaw@aol.com

                                            /s/ *Harris K. Weiner*
                                            Harris K. Weiner